There is one substantive claim left in this case, and that is plaintiff's claim that Alliance breached its contractual obligations and failed to pay crop damages. The arbitration agreements in this case, and there are 1,700 of them, require disputes regarding crop damages to be arbitrated, and the Federal Arbitration Act requires that those agreements be enforced. But do they require arbitration of crop yield damages? Yes, they do. That's an intangible. Everything in the easement that's quoted on page 7 of the addendum is tangible property. Crops, pasture, fences, drainage, tile, structures, and timber, as opposed to the AIMA, which says, such damage, expressly says, such damages may include, but are not limited to, loss of those tangible types of property. So where does crop yield fall? I know where the district court thought, but you've got to tell me why crop yield is an intangible property covered by the Arbitration Clause. Well, you can tell based on the plaintiff's own submissions. The plaintiff's expert, who has put together their — I don't care about it. I know. We're talking text. Well, the text says damages to crops. But no expert controls our Court's interpretation of a contract as a matter of law. No, of course not, Your Honor. What I mean to say is the only claims in this case are for crop damages, and you know that based on the plaintiff's complaint, and on their briefing, and on their expert. They are asking for payment of money for crops. That's what they're asking for on a per acre, per bushel basis. They're talking about a reduction. A reduction in crop yield is not damage to the crops themselves. Yes, it is. That's the point. That's the whole point of the appeal. How can you just say, well, yes, it is? Well, because you can look at the arbitration agreements. So the arbitration agreements provides — I'm looking at it. I can read it to you. — provides that the grantee, meaning alliance, shall pay for damages to crops. It doesn't say it excludes crop yield. And I don't understand, I guess, Your Honor's question about what's tangible versus intangible. It is tangible. There are damages to crops, and an arbitrator gets to decide that. Oh. I mean, textually, it's at least ambiguous. Respectfully, I disagree. I think the arbitration agreement is clear and unambiguous. It applies to — Okay, well, I think this is where the district court came out. Are we talking about an issue of law? Yes. So it's your position crop yield loss, damage to crop, and crop losses are all synonymous terms? At least in this case, yes. Pardon me? Yes. Okay. So when the appellee argues that crop yield is different than crop losses, you disagree with that? I disagree. So if the yield goes down, they get compensated for crop losses is what you're saying. And the measurement for crop yield damages is damages to crops. The arbitration — Yield, but there aren't crops. You're not damaging a crop if you don't grow it in the first place. I think that's the distinction. If the yield goes down, you're not damaging anything because you don't have it in the first place because you don't have the yield. Yes. So, again, if you look at the — You see, none of the — all of this is interesting to me because your client did not make this equation. Your client came up with a crop yield program to compensate, recognizing an obligation to reimburse for crop yield reductions caused by the pipeline. Construction operation doesn't matter. But what I just read you from the AIMA agreement explains why your client would do that. Because the AIMA agreements made clear that the damage that they were obligated to indemnify or reimburse were not limited to the tangible properties. Tangible property that might otherwise be read — I mean, the AIMA starts out with the same collection of tangible properties as the arbitration agreement, but then says that's an included but not limited to provision. Arbitration provision, unless you've got another section of it, doesn't do that. And for logical reasons. We don't want an arbitrator talking about yields. That's something they don't necessarily know. We get into a property — we get a property damage appraiser and an arbitrator who knows property damage like fire — you know, home fires and so forth. Now they're on turf they know. You get them talking about what caused the reduction in crop yield. No, we aren't going to — we don't want that. We aren't going to compel arbitration of that. Of course, parties can agree to it. Respectfully, I think the parties did agree. And I think that — Okay, where? In the arbitration agreement. It's not — it simply says damages to crops. A measure of damages to crop yield is exactly what plaintiffs have put forward in this case. They want payment of money for damages to crops. Now, I saw some reference to there wasn't any physical damage to crops or no plaintiff claims that. Is that — is that revealed in the complaints? I think what plaintiffs are claiming is not that Alliance drove a truck over the crops. They're claiming that due to the construction, laying, maintaining, operating, et cetera, which comes from the arbitration agreement, that the crops are not growing as well as they should and that they have suffered damages as a result. And the damages to the crops are measured in, according to the plaintiffs, price per bushel per acre. They want money for damages to crops. The arbitration provision provides — That's what they claim. They may lose because crop, you know, damage reductions in crop yield. The causation is much harder to prove when you want to blame a neighboring pipeline and you don't have any evidence of flooding or release of toxic gases or anything else that could physically harm the crops. But, oh, well, you know, China wouldn't buy the seed and so the price went down or whatever. So, again, if you look at the arbitration provision, just the plain language, it talks about damages to crops. It doesn't say damages to crops except for damages to crop yields. It just says damages to crops. But the AIMA agreement went the other way. I don't — You said, wait a minute, now don't take this to — if you read this narrowly as covering only tangible property, beware because we mean to require compensation for more than that. So, again, we need to look at this case and plaintiffs' claim. Plaintiffs are claiming breach of contract based on the failure to pay crop damages. For any activity — We've exhausted this. Okay. All right, so I'll skip ahead. The district court got almost everything right we submit in its order. It correctly determined that there are arbitration agreements, that they require arbitration, not merely appraisal, that they apply to crop damages, and that you can't avoid getting around the crop damages by calling a soil injury. The district court got all of that right. The district court — Do you contend that the easements require the same payments as the AIMA agreements? I am looking at the arbitration agreement in the easement, and the easement — and that says that the arbitrator gets to decide. That's what's clear. We're not talking about this. The issue is not the substantive standard to be applied. The issue is the forum. Well, let's just not make the decision to terminate the crop yield program. What in the arbitration agreement covers that? Well, what is the crop yield program? It was a mechanism to pay for crop damages. Okay. The plaintiffs and Alliance do not mutually agree about crop damages, therefore goes to arbitration. Why would you arbitrate that? Because that's what the arbitration provision requires, and this Court must enforce it. Facially, it doesn't require that. The arbitrator can decide you didn't compensate enough after you terminated the program. Now do it. Where does the arbitrator get off of ordering Alliance to go back to a program that it voluntarily decided was the best way to satisfy its obligation? That's just absurd. Well, to be clear, there's no claim for injunctive relief before the Court. There is no claim to reinstate the crop yield program before the Court. If you put this issue before an arbitrator, that's what those folks do. We order you to reinstate the program because it was doing the right thing. And now we've got to review that as going, you know, beyond the arbitrator's power. The issue before the Court today is, does the arbitration agreement need to be enforced? And the answer is yes. And does the arbitration agreement The issue before us today is carve-outs and the cross-appeal and the stay. We're not arbitrators. We don't get to decide, you know, when the petition is filed, what it covers. The district court improperly carved out those issues from arbitration. All of the issues that the district court carved out are And now I've covered two of them, saying, you know, your, oh, it has to be Ipsy-Dixit argument is not compelling, not persuasive. It doesn't go far enough. Well, we're asking the Court to enforce the arbitration agreement. It applies broadly to crop damages. There are no exclusions. There are no limitations. There are no restrictions. There are no carve-outs. No, there are things it doesn't cover. You call it a carve-out. Maybe the district court calls it a carve-out. These labels get very, very in the way of legal issues. Your Honor, we know it's a carve-out, in part because the district court stayed the arbitrable claims pending these other issues. So the district court essentially held, the arbitration can't go forward until I decide these issues first. That is a two-step, two-form dispute resolution process regarding a dispute over crop damages. I now understand why it's been briefed as it is. Well, you said that the issue of the crop yield program isn't before the arbitrator. But that is one of the issues that was carved out. I'm sorry if I was unclear. The entirety of plaintiff's claims relate to crop damages. And so, therefore, the entirety of plaintiff's claims must be arbitrated. Well, under your theory, the district court obviously didn't understand your argument because she says that you apparently, at least in her view, took the position that diminution to crop yield is different than crop damage. In this case, if you're looking at the plaintiff's claims, it's all the same. They are claiming damages, and you can say it's in the form of yield loss. But the measurement is they want payment for crop damages. That's what they want. That has to be arbitrated. That is the entirety of plaintiff's claims. So when she understood the claim to be that crop yield was different than crop I don't want to, I guess, get to what the district court said or didn't say on that topic. All I can say is that the plaintiff's claims here are seeking crop damages, and crop damages have to be arbitrated. A different change of subject. What is the status of claims right now? The district court entered a stay, I guess, pending our appeals. What is the status of claims by farmers without easement arbitration costs? They have been stayed. Why? Why should those people be denied crops just as delayed as justice denied? What justifies delaying justice for them? I think the district court didn't want to go. You tell me. I'm not grilling the district court. I want to know. I know you wanted this, your client, or on behalf of your client, you wanted a complete stay, and so I'm putting it to you. So we wanted a stay only because the court determined that some issues were not arbitrable. We think all the issues I'm talking about a group of people who have no arbitrable, nothing to be arbitrated. Everything goes to the court for them or a jury. Yes. Why can't we start that train? Because it will irrevocably separate the plaintiffs with arbitration reasons from those who do not. It will mess up the class or, oh, my goodness, it might influence the arbitrator. Is that what you're arguing? No. There is, and I'm about to run out of time here, it's This is perhaps the most troubling part of the case for me. There is no authority that allows a court to treat different members, to treat members of the class differently. How about the word, does the word subclass ever come into your vocabulary? The district court did not Does the word decertification ever come into your vocabulary? Alliance agrees, or Alliance's position is that class should never be certified. We look forward to bringing a motion to decertify at the appropriate time. I think all we have to do is lift that stay, and either partial decertification or a subclass will result, and those people will get their day in court. What's so un-American about that? Alliance has no objection to plaintiffs without arbitration agreements litigating their claims in court. Alliance objects to But it's timing. Well, Alliance thinks that You just told me that you didn't, that your client didn't want what it asked for. What we want is an order holding that all the claims are subject to arbitration. Justice delayed is justice denied, but justice delayed is good for us. That's your job description, and you're doing it as well, but why? What is the justification? Oh, you can't do that procedurally. That answer doesn't do it for me. I want a real world, real people answer why these folks shouldn't just proceed with their cases. They shouldn't because then you'll have some members of the class who will have their claims stayed and others who would have their claims go forward. So what? Well, that's not How about the word test case? Does that ever come into your This isn't a test case. Pardon? This isn't a test case. It's a class action. Pardon? This is a class action. The class has been certified. That's what I said. You never heard the word test case in a Rule 23 context? Alliance filed a petition for interlocutory review under 23, but that was denied, which is why we look forward to revisiting class at the appropriate time. That was yesterday. Every case changes. A case changes daily, and litigators that don't keep track of that get caught in the exhaust. I don't understand why we can't, why at least those people, we shouldn't lift the stay and direct the court to find a way to proceed with their claims. The arbitration will come, and we'll deal with that. And the carve-out issues will come as to the others. They probably would be decided as a claim on a preclusion basis if the folks who don't have an arbitration agreement got to get their case resolved. And why isn't it? I think actually all these From a judicial efficiency and a client fairness, why isn't that what we should be doing? I think actually all those issues that you have raised show why we shouldn't have, I guess, let me back up. The issue before the court is, is the arbitration agreement enforceable? Does it cover the claims in this case? The answer is yes to both. And so Alliance has a right to enforce those. But now we have a stay, and I believe the stay has been challenged. The stay has been challenged. Alliance thinks that the district court's order, insofar as it denies Alliance's motion to compel arbitration, should be reversed, and that the claims of plaintiffs subject to arbitration agreements should be dismissed. And that the claims of everyone who is not subject to an arbitration agreement, those claims should go forward. Okay. And why can't they go forward before we work out, we come up with our decision? Because these issues Because people are all worried about who's going to go first, the court or the arbitrator. It's not just that. It's who gets to make the decision. Yeah. The court or the arbitrator. It's not just timing. Yeah. And 1,700-plus landowners said the arbitrators get to make the decision, not the court. Okay. I understand. Ms. Regan. Good morning, Your Honors, and may it please the Court. Ann Regan from Helmuth & Johnson, on behalf of the named plaintiffs and the certified class. I'd appreciate it if you'd start with the last issue. Which part, the stay? Why should the farmers, without an arbitration agreement, be stayed for any length of time? We don't think they should be stayed. We opposed the stay when Alliance brought it in the spring. Now, what will be your position if we lift the stay tomorrow and it takes us X number of weeks, months, you know, for a tough case? What will be your position in the meantime with the district court? Well, no notice has been sent due to For what? To the class. So what happened, Your Honor, was that the class was certified So the class becomes inappropriate? No notice was sent to the class. In June of 21, the district court certified the class, including those members with arbitration easements. Alliance appealed that decision to this court, which was denied. We went forward with a notice program that Alliance objected to. We presented it to the district court at the same time when we were also, as required by the scheduling order, to brief the summary judgment and Daubert motions. And so the district court So it's on hold. Yes. But that was yesterday. This will be a new situation. Well, notice still needs What position will you take? Yes. And you can say I'm not prepared to answer. Yeah. And I want to know what you should have thought of this. What will be your position in the district court if there is no stay pending appeal as to those farmers? Notice must be sent and the summary judgment and Daubert motions, which are fully briefed, should be decided. Those motions were heard in January at the same time as the motion to compel arbitration. So those things need to happen, and then we will go forward with trial. And you'll say there is still commonality for the entire class? Yes. Yes. The issue as to Wow. Well, the issue as to whether, and you touched upon it yourself, there is no, we could go forward with a subclass, as you just suggested. For example, Minnesota, North Dakota, whatever, we could come up with a common way to try the issues, because at the heart of it, it doesn't matter what happens with respect to those who are part of an easement class or those who are part of a non-arbitration easement class. But frankly, we haven't really thought about it because we do think that the court erred in reading the easements as it did, but to encompass our crop yield loss compensation claims. Why is crop yield loss different than crop loss? I mean, at the end of the day, I mean, it sounds like the same thing. It does sound like the same thing, Your Honor, but it's not. In this case, the crop yield loss is due to the soil injury resulting from the construction and ongoing operation of the pipeline. And so it is not similar to damages to standing crops. It is something that can be ascertained, and our expert has a model for how it can be measured. The measurement of that shows the soil injury itself. This is Judge Kobus. You just said damage to standing crops. Is that in the easements at all, that definition? So the easements, Judge Kobus, Your Honor, the phrase damages to crops, I mean, these oil and gas pipeline easements have been used for decades, and those historically have been interpreted to mean damages to standing crops, for example, as opposed to a reduction in yield. Assuming that you could prove a damage to a standing crop, what is the measure of damages then? Isn't that loss of yield? I mean, for example, I may be going off basis here, but if you have federal crop insurance and you have a hailstorm that knocks down your corn crop, for example, isn't the payment you receive based on the projected yield for those crops? In the crop insurance program, Your Honor, that could be, but the reason the payment ensues is because that's how it's measured. This is a little different than that. We're not saying that – But how would you measure the damages here if it's not yield? Well, it is measured by yield, Your Honor. So it's the differential between what is happening on the right-of-way versus what is happening off the right-of-way. Does that answer your question? Well, it is – does Alliance disagree with that? I understood they had to say that a diminution in crop yield is the same as a crop loss. So I want to be clear about terminology. They may have referred to it as crop loss. We refer to it as crop yield loss, and those claims are encompassed by the AMAs. But I understood, for purposes of compensation, Alliance saying they're one and the same. I think so. That's right, Your Honor. But here, for purposes of bringing all these claims within the scope of the arbitration easement, they're saying it's the same as damages to standing crops, and it's not. And, in fact, they've argued differently in other courts. Let me ask you, Counsel, have you – where in the complaint, the pleadings or the briefs to the district court, do you make this distinction that I can go back and kind of look at it, that it was presented to the district court? Because I don't get the sense the district court grappled with this issue. I think that is correct with respect to the order that is on appeal, Your Honor. But with respect to our complaint, we are clear that we are seeking compensation for reduced crop yields. So, starting from Paragraph 2, we talk about ongoing, permanent, and uncompensated crop yield losses. Paragraph 137, in the name plaintiff's allegations, we state, Alliance has refused to compensate plaintiffs and class members for crop yield losses sustained after 2014. And, similarly, with our declaratory judgment claim, we ask for a declaratory judgment requiring Alliance to pay crop yield loss damages. So, just bear with me, but you're basically just arguing the easements don't cover those damages. Is that fair? That's correct. The easements do not cover – or, I should say, the AMA claims are not within the scope of that easement language. And was that presented to the district court? Yes. So, we made that clear when we were before the Court in January in the transcript of the hearing at pages 33 and 32. And we also cited to the Williams case, which also discusses that. Can you say that again? I'm sorry. Which one? Williams or? The one you just – So – You're saying that the AMA obligations are not the same as the easement obligations. We – well, the easements have to – they incorporate the AMAs. So, within the AMAs themselves, all the obligations and duties that are in the AMAs – I meant the arbitration clause, not the easement in total. Right. So, our – we are saying the phrase damages to crops, and I'll just say representatively, it's in paragraph 4, is not the same as crop yield loss. I was interested in your telling me where to go in the record for your position on the AMA agreement versus the easements. Sure. And if you look at pages 32 and 33 of the district court transcript on oral argument from January of this year, there is a discussion of the difference between damages to standing crops versus crop yield loss compensation. Well, I know there's a difference, but why are they not both encompassed by the arbitration agreement? That seems to me the crux of the appeal, is that they're both – as I understand Alliance's position, they're both damages to crops, they're both compensable, and the arbitrator decides whether or not there's in fact been a damage and how much. Why is that position wrong? The position is wrong because in the AMA's themselves, there is no arbitration agreement. So, no one was agreeing that those claims, to the extent they derive from the AMA's themselves, and Judge Loken touched on this in his comments, which is that the AMA's have broader obligations, including compensation, not just mitigation of construction and that kind of thing. They have a broader obligation for compensation for the intangible that can be measured through a crop yield. I understand that, but why – but as I understand, Alliance doesn't dispute that. They're just saying that whether or not that damage occurred and the amount of that damage is subject to the arbitration clause. And I don't know that saying, well, the AMA doesn't have an arbitration clause answers the question. It seems to me what it's boiling down to is not the question anybody's posed, but the question whether the general terms of the easement that incorporate the – as it must, incorporates the entire AMA obligation, whether that is broader than the arbitration clause. That's an intra-easement textual question, and nobody's addressed it. If I understand your question, Your Honor, our view is that the easements, that paragraph 4, speak to a narrower category of damage or damages that are not reflected – that those don't modify the AMA. I guess you don't understand my question. No, I don't think I do. Well, you just – you admit – well, at first you say AMA doesn't have an arbitration clause. Correct. You also – you disagree, but I think it's – AMA leaves Alliance the ability to enter into easements that include arbitration clauses. You don't like that proposition, but that's what we're – let's assume that. Let's assume that. Okay. Okay, so the easement has to include, by reason of statute, everything that AMA obligates be compensated, right? Correct. So if AMA goes beyond crop yield, the easement has to go – if AMA includes crop yield, the easement has to include crop yield, but the arbitration clause doesn't. Correct. Wow. So now we have a textual question that nobody has even – I haven't seen anybody address in the briefs. Where do you get in the easement agreement textually the ability to distinguish the total obligation from the part of the obligation that's arbitrable? So going back to what we were talking about with respect to the AMAs themselves, you could negotiate construction standards, for example. There were certain things, such as rock removal or where the tile line would be placed. Those things could be negotiated. But what you couldn't negotiate away was the crop yield loss. Now, the right for that compensation. But you can make it arbitrable. No, Your Honor, I don't think you can. Well, wait a minute. If you can make tangible crop damage arbitrable, that's just your objection to arbitration stated broadly. But I'm saying assume that the AMAs did not preclude Alliance from putting arbitration clauses in their easements. Now you have a question of did they do it or not. And did the farmers agree to it, of course. And our view is that the farmers did not, could not, have agreed to... Could not? Could not have agreed to... Why could they not? Because... Wait a minute. How is it that they could not agree to arbitrate crop yield, but they could agree to arbitrate quote, tangible crop damage? Because for over a decade they didn't arbitrate those damages. They didn't, that amount of money that was compensable in crop yield loss. So... So this is just a business practice thing? We don't have to worry about text? Well, no, Your Honor. But I think our argument is that the phrase damages to crops and the easement itself does not encompass what was in the minds of the states when they were negotiating on behalf of the plaintiffs. As I pointed out to opposing counsel, the AMA agreement seemed to acknowledge that with the including, but not limited to, language. Right. And that language does not appear in the easements. We're not, say if we're reading them together, but I think if you read them as standalone agreements, we could bring our claims, and we may do this, we could have just brought the claims under the AMAs themselves. So, and I don't know where we would have been without that, but, you know, again, that was then. You'd have a tough, tough time. I don't know, Your Honor, but what do you mean? Well, Alliance wasn't a party to the AMAs. Alliance was a party to the AMAs, Your Honor. I mean, wait a minute. The plaintiffs, is that what you mean? And our argument is that they were third-party beneficiaries. I saw in the briefs the problem you'd have suing directly under the AMAs. Okay. Or maybe the district court opinion. So I see my time is up. Are there any other questions? I just have one. Is, are all your claims just crop yield loss? Well, our claims are for breach of the AMAs for not paying for crop yield loss diminution. Yes. Since 2014. You're not making any claims for loss of standing crops. Right. Right. Thank you. Is there a rebuttal time? I'll give you two minutes for rebuttal. Okay. Thank you, Your Honor. I'd like to, unless the court has any questions, maybe turn back to the textual issues that we've been talking about with the arbitration agreement. And so, again, the arbitration, let me back up. The arbitration agreement is found in the easement. The easement incorporates the AMAs. The arbitration agreement provides that a lion shall pay for damages to crops. And so, the reason why I think that all of plaintiff's claims are covered by that phrase, damages to crops, is that it's not, you know, it doesn't say a lion shall pay for damages to standing crops. It just says damages to crops. And so, crops may be damaged in any number of ways. And you can measure that in the form of yield loss. You can measure in the form of. Doesn't the easement say loss of crops? Isn't that the language? And the AMAs, I think, say damages to crops. Is there a meaningful distinction between those two terms? I'm sorry. You broke up a little bit, Your Honor. I'm sorry. Yeah. I think the easements use the term loss of crops. And I think the AMAs use damage to crops. Is that correct? I don't think so, actually, Your Honor. So, I believe that the first sentence of the arbitration. I'm confusing the, maybe I'm confusing the two then. Well, I'll just read it real quick. Okay. So, this is the arbitration agreement, which is found in the easement. And it reads, the grantee, which is a lion, the grantee shall pay for damages to crops. Okay. Okay. I'm working out. What is the language in the AMAs? Which, and I'm sorry, what was the question, Your Honor? The AMA language, what is that? I do not have that at my fingertips. It's not limited to crops? At least it's partially quoted in the district court's opinion on page. I think it says, such damages may include but are not limited to loss of crops. Yes. But it starts out by saying, damages to private property beyond the construction. Such damages may include but are not limited to, and then the same language that's in the arbitration clause. Yes. And so, again. Are they the same or not? In this lawsuit, all the claims fit within the arbitration provision. Everything that the plaintiffs are alleging falls into the bucket of damages to crops. And then the second sentence of the arbitration agreement provides that said damages, if not mutually agreed upon, shall be arbitrated. So, the trigger for arbitration is disagreement. And there's no limitation or restriction on the basis for disagreement. Somebody says, if the parties disagree. Do you have anything new? But damages to crops, it shall be arbitrated. I guess I just want to clarify that, you know, we are looking at plaintiff's complaint here, and plaintiff's complaint makes claims under both the Amos and the easements. So, I just want to make sure that that is clear. And one other item I'd like to maybe close with is that, I think if this were a single case involving a single landowner, and the single landowner says, for whatever reason, my crops are damaged, and we were in court, I think a judge would say, yes, go forth and arbitrate. And the arbitrators get to decide. That's what the arbitration provision means. And that's not what happened here. And the district court doesn't. Okay. You've long exceeded. Thank you. It's a complicated case. If you've been well, argument has been helpful.  Thank you, Your Honor. Please call the last case for argument. 22-1478, Eric Sorensen, et al. v. Joanne Sorensen.